UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAUREEN FRENCH,

Plaintiff,

-v-

HRA/NYC, et al.,

Defendants.

24-CV-05089 (JAV)

OPINION AND ORDER

JEANNETTE A. VARGAS, United States District Judge:

Plaintiff Maureen French ("Plaintiff" or "French") commenced the instant action *pro se* against the New York City Human Resources Administration ("HRA") and her former supervisors and co-workers Karen Roach, Joan Reid, Jacquelyn Brown, Tony Irhiemi, and Merva Boatswain (the "Individual Defendants") (collectively, "Defendants"). Plaintiff asserts claims of employment discrimination based on race against all Defendants under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). ECF No. 1 at 3-4.

Presently pending before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. That motion to dismiss is **GRANTED**. Plaintiff shall be granted leave to amend her complaint to name the City of New York as the proper

defendant with respect to her claim of race discrimination under Title VII. All remaining claims are dismissed with prejudice.

**BACKGROUND**

The following allegations from the Amended Complaint are accepted as true and construed in the light most favorable to Plaintiff for the purpose of resolving the motion to dismiss. *Xeriant, Inc. v. Auctus Fund LLC*, 141 F.4th 405, 411 (2d Cir. 2025).

French is a White woman who worked as a caseworker at the HRA's Office of Child Support Services' ("OCSS") officein the Bronx from November 26, 2018, to January 4, 2024. ECF No. 34 ("Amended Complaint" or "Am. Compl.") at 11. In 2022, the majority of staff members in the office were Black, and French was one of two White women among approximately 40 employees. *Id.*

French's allegations largely center on a recurring interpersonal conflict with a Black caseworker, her former colleague Merva Boatswain ("Boatswain"), and OCSS management's disparate treatment of French as compared to Boatswain in response. *Id.* at 11-12. French alleges that this disparate treatment based on race led to severe consequences for herself, including being disqualified for a promotion, but minimal consequences for Boatswain, who was later promoted. *See id.* at 11-21. As relevant here, ongoing tensions between French and Boatswain culminated in two incidents on November 14, 2022, and May 4, 2023. *Id.* at 12, 16-17.

On November 14, 2022, Boatswain "went on a verbal tirade maligning [French's] reputation" for approximately 30 minutes while the "entire office stopped

to stare at . . . Boatswain" as she "call[ed] [French] a girl, trash[,] and no better than the sh*t on her shoe." *Id.* at 12. In response to French's complaint about the incident, OCSS management reprimanded Boatswain via email, instructing her "to not be disrespectful to [other] staff," "to not disrupt [others]," and to "be mindful of [her] tone." *Id.* at 13.

French also submitted a complaint to the Office of Conflict Resolution ("OCR") in connection with the November 14 incident. *Id.* at 14. On December 14, 2022, OCR emailed French with the results of its fact finding, stating that both French and Boatswain were spoken to about the incident and advised about the office's code of conduct and how to proceed in the future. *Id.*

On May 4, 2023, French was at her desk speaking with one of her supervisors, Tony Irhiemi ("Irhiemi"), when Boatswain approached her and handed her a piece of paper. *Id.* at 16, 18. Upon realizing the paper concerned an upcoming union election, French attempted to hand it back to Boatswain, but Boatswain refused to accept it. *Id.* at 16-17. French then crumpled up the paper, threw it onto a nearby desk, and asked Boatswain to leave. *Id.* at 17. When Boatswain refused, French asked twice more, Boatswain continued to refuse, and French asked Irhiemi to ask Boatswain to leave. *Id.* Irhiemi then said, "Leave, Merva." *Id.* When Boatswain still refused to leave, French said, "Leave Merva, you're nothing more than garbage." *Id.* Boatswain responded that she wanted French "written up on charges." *Id.* The next day, OCSS management suspended her from work without pay from May 8 to May 19, 2023. *Id.* at 17-18. The suspension letter French

received did not identify any charges. *Id.* at 17. An HRA police officer then escorted French out of the building. *Id.* French later learned that, due to the May 4 incident, her HRA employment record reflected that she had assaulted Boatswain by throwing a piece of paper at her. *Id.* at 20.

On May 16, 2023, French was offered and accepted a promotion to supervisor at HRA's Customized Assistance Services beginning July 17, 2023. *Id.* at 18.

On June 5, 2023, French alleges she was singled out for an evaluation among all employees in her unit and most likely the entire office. *Id.* at 19. She received an unsatisfactory evaluation because cases were reassigned from her in 2022. *Id.* French, however, maintains that those cases were not reassigned from her in 2022, but in 2023 during her suspension. *Id.*

On June 27, 2023, French received a letter stating that she was disqualified from her upcoming promotion due to "disciplinary action and unsatisfactory prior public employment." *Id.* at 20. Accordingly, she alleges that she was denied promotion because of her May suspension and her June evaluation. *Id.* at 20-21.

The Amended Complaint catalogues various other incidences that French alleges demonstrate disparity in treatment. These incidences include: French's "supervisor consistently expecting [her] to give up personal time during lunch or after work which was not expected of others;" being "given additional work that others were not;" being "threatened with being [marked absent without leave] twice, but no other staff received such treatment;" HRA police asking about her interactions with OCSS management multiple times although "no one else received

such treatment;" Irhiemi helping a client submit a complaint about French when another supervisor was allegedly responsible for the client's issue; and her computer remaining unrepaired for months while her supervisor's computer was fixed within 24 hours when she encountered the same issue. *Id.* at 14-16.

French asserts that, because "[t]he harassment was relentless," she "left the office on January 4, 2024." *Id.* at 21.

## PROCEDURAL HISTORY

Plaintiff initiated this suit on July 3, 2024, filing her complaint and an application to proceed *in forma pauperis*. ECF Nos. 1, 2. The application was granted, and an Order of Service was entered on August 27, 2024. ECF No. 7.

On February 7, 2025, Defendants moved to dismiss the complaint. ECF No. 21. The Court ordered that Plaintiff either file an amended pleading in response to the motion to dismiss or an opposition to the motion to dismiss by May 16, 2025. ECF No. 25. The order cautioned that "Plaintiff is not required to file an amended complaint, but is on notice that she may not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." *Id.*

Plaintiff filed an opposition to the motion to dismiss on April 26, 2025. ECF No. 26.

On May 14, 2025, the Court held an initial pretrial conference in this matter. ECF No. 32. At that conference, the Court discussed with Plaintiff the potential amendment to her complaint. *Id.* at 10:15–15:18. The Court emphasized that if Plaintiff had additional allegations that she wanted to include in response to the

motion to dismiss, including additional allegations in support of her hostile work environment claim, this was her opportunity to amend. *Id.* The Court further explained that if Plaintiff failed to include such allegations now, and the Court ruled against her on the motion to dismiss, it was unlikely to grant her an additional opportunity to amend to add such allegations. *Id.* The Court granted Plaintiff two weeks to submit a letter to the Court regarding potential amendment of the complaint. *Id.* at 15:7-15.

On May 22, 2025, Plaintiff submitted a letter requesting leave to amend her complaint. ECF No. 30. The Court granted Plaintiff leave to withdraw her opposition to the motion to dismiss and instead file an amended complaint. ECF No. 31. Plaintiff filed the Amended Complaint on August 1, 2025, ECF No. 34, and Defendants again moved to dismiss on largely the same grounds as their original motion to dismiss, ECF No. 38.

## LEGAL STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true "all factual allegations in the complaint" and "draw[s] all reasonable inferences" in favor of the non-moving party. *Romanova v. Amilus Inc.*, 138 F.4th 104, 108 (2d Cir. 2025) (citation omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, [the standard] requires more than labels[,] conclusions, and a formulaic recitation of a cause of action's elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The Court's charge in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Jennings v. Hunt Companies, Inc.*, 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004)).

*Pro se* litigants' submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (citation omitted). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.* (citation omitted). Accordingly, "the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Johnson v. City of New York*, No. 23-CV-03018 (DEH), 2024 WL 3520445, at *4 (S.D.N.Y. July 23, 2024) (citation omitted).

## DISCUSSION

### A. Motion to Dismiss

In moving to dismiss the Amended Complaint, Defendants argue that (i) Plaintiff's state and city human rights law claims are barred by both the election of remedies doctrine and the statute of limitations, thereby depriving the Court of subject matter jurisdiction under Rule 12(b)(1); (ii) the Amended Complaint improperly asserts claims against the HRA, which is a non-suable entity; (iii) the

Section 1981 claims fail to state a claim, as Section 1981 only permits suit against private actors; (iv) the Title VII claims against the Individual Defendants must be dismissed for failure to state a claim, as Title VII does not provide for individual liability; (v) the Complaint fails to allege sufficient personal involvement to sustain claims against the individuals under the NYCHRL and NYSHRL; and (vi) the allegations in the Complaint fail to state a claim for race discrimination, retaliation, or hostile work environment under either Title VII or state and city law. ECF No. 38-1 at 1-2.

In her response, Plaintiff concedes many of these points. ECF No. 41. Plaintiff does not oppose the dismissal of the NYSHRL and NYCHRL claims for lack of subject matter jurisdiction. *Id.* at 4. She agrees that the HRA cannot be sued as a matter of law. *Id.* Plaintiff also agrees to the dismissal of all of the Individual Defendants from this action. *Id.* at 5. Accordingly, the motion to dismiss is granted as unopposed.

**B. Leave to Amend**

Plaintiff requests leave to file an amended complaint naming the City of New York as the proper defendant with respect to her Title VII claims, or alternatively requests that the Court substitute the City of New York as the defendant with respect to those claims. *Id.* at 4-5.[1] Defendants oppose Plaintiff's request to amend,

---

[1] Plaintiff did not mention the Section 1981 claims in her response and has not sought leave to amend to bring Section 1981 claims against the City of New York. In any event, as Section 1981 "does not provide a separate private right of action against state actors," *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018), any claims French might bring against the City of New York under Section 1981 would be futile.

arguing that any such amendment or substitution would be futile. ECF No. 42 at 6-7.

Under Rule 15, courts "should freely give leave [for a party to amend its pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). "A *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [s]he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (cleaned up). Accordingly, "a court should not dismiss a *pro se* complaint 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Garcia v. Westchester Cnty. Dist. Att'y Off.*, No. 21-CV-00348 (LLS), 2021 WL 411546, at *3 (S.D.N.Y. Feb. 4, 2021) (quoting *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015)).

Leave to amend can nonetheless be denied due to futility. *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). "Proposed amendments are futile if they would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (cleaned up). Consequently, "the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *Id.*

The Court concludes that the allegations in the Amended Complaint, which were brought improperly against the HRA, plausibly state a claim for race discrimination claim under Title VII if brought against the City of New York. Thus, permitting Plaintiff to amend her pleading to name the City of New York as the

proper defendant with respect to such claims is not futile.

The Amended Complaint does not, however, plausibly state a claim for retaliation or hostile work environment, even were the City of New York to be substituted as the proper defendant. Moreover, Plaintiff has previously been granted an opportunity to amend her complaint to amplify these allegations. Plaintiff has not identified any additional allegations that could cure the fundamental deficiencies of her pleading. Accordingly, although the Court affords special solicitude to *pro se* Plaintiffs, the Court denies further leave to amend with respect to Plaintiff's hostile work environment and retaliation claims under Title VII. *See Barnett v. Diaz*, 19-CV-00415 (NSR), 2019 WL 6340960, at *1-2 (S.D.N.Y. Nov. 26, 2019).

**C. Discrimination**

"[T]o defeat a motion to dismiss . . . in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

The Amended Complaint alleges that French's employer suspended her for ten days in May 2023. Am. Compl. at 17. These allegations satisfy the adverse action prong. *See Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 356-57 (S.D.N.Y. 2006) (holding that a "ten-day suspension" qualifies as "an adverse employment action"); *see also Witek v. City of New York*, 807 F. App'x 52, 54 (2d Cir. 2020)

(summary order) (holding that suspension is an adverse employment action).

Accepted as true and construed in the light most favorable to French, the Amended Complaint's allegations also give rise to an inference that French's race was a motivating factor in her employer's decision to suspend her. "A plaintiff may demonstrate circumstances giving rise to an inference of discrimination by alleging that [s]he was treated less favorably than similarly situated employees of other races." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 229 (2d Cir. 2014). "The plaintiff's and comparator's circumstances must bear a reasonably close resemblance, but need not be identical." *Id.* at 230 (cleaned up). For example, "allegations that the plaintiff and [a] comparator[] worked in the same group and were accountable to the same supervisors, but were subjected to disparate treatment may be sufficient to raise an inference of discrimination." *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 99 (S.D.N.Y. 2023) (citation omitted). Ultimately, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

The Amended Complaint alleges disparate treatment of French as compared to Boatswain. Both French and Boatswain were caseworkers reporting to the same supervisors at the Bronx office of OCSS. *See* Am. Compl. at 11-15. Both French and Boatswain engaged in similar conduct—disparaging the other on separate occasions[2]—which led to disciplinary action. *Id.* at 12-13, 16-17. Yet where Boatswain received only a written warning to refrain from repeating the conduct,

---

[2] The Court accepts as true French's allegation that she did not throw a piece of paper at Boatswain on May 4, 2023. *See* Am. Compl. at 17, 20.

French was instead suspended for ten days without pay. *Id.* at 13, 17. The Amended Complaint thus alleges that French was treated less favorably than a similarly situated employee of another race. Accordingly, the Amended Complaint's allegations give rise to a minimal inference that French's race was a motivating factor in her employer's decision to suspend her.

**D. Hostile Work Environment**

To plausibly allege a hostile-work-environment claim under Title VII,

> a plaintiff must plead facts showing 'that the complained of conduct (1) is objectively severe or pervasive — that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic].'

*Shkoza v. N.Y.C. Health & Hosps. Corp. & Jacobi Medical Ctr.*, No. 20-CV-03646 (RA), 2021 WL 4340787, at *4 (S.D.N.Y. Sept. 22, 2021) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)). Accordingly, the test for a hostile work environment "has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Further, "generalized hostility or generally uncivilized behavior is not actionable." *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 580 (S.D.N.Y. 2023). Rather, the "offending conduct must have been keyed to a protected characteristic of the plaintiff." *Id.* (collecting cases).

To determine whether a plaintiff plausibly alleges a hostile work environment, courts "consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn*, 795 F.3d at 321 (quoting *Harris*, 510 U.S. at 23). Ultimately, "[t]he incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* (citation omitted).

The Amended Complaint fails to plausibly allege a Title VII hostile-work-environment claim because the alleged conduct was not sufficiently pervasive, objectively hostile, or sufficiently connected to a protected characteristic. The alleged incidents underlying French's claim are sporadic rather than continuous. *See id.* at 14-16. Moreover, barebone assertions about being expected to give up personal time during lunch or after work, assigned additional work, warned about being marked as absent without leave on two occasions, questioned about her interactions with management, subjected to her supervisor helping a client file a complaint against her on one occasion, and left with a faulty computer for months are insufficient to plausibly allege an objectively hostile work environment. *Id.*; *see, e.g.*, *Fleming v. MaxMara USA, Inc.*, 371 Fed. App'x 115, 119 (2d Cir. 2010) (summary order) (concluding that no hostile work environment existed even though "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties

outside of her responsibilities, threw books, and sent rude emails to her" (citing *Harris*, 510 U.S. at 21)); *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, No. 08-CV-07586 (GBD), 2011 WL 4000997, at *11 (S.D.N.Y., Aug. 19, 2011) (concluding that "diminished [job] responsibilities," "exclu[sion] from staff meetings," deliberate "avoid[ance]," and "yell[ing] and talk[ing] down to," among other factors, was not enough to show that defendants' conduct was sufficiently severe), *aff'd*, 488 Fed. App'x 530 (2d Cir. 2012) (summary order). Even combined with detailed allegations about Boatswain's continuously loud and rude behavior, *see* Am. Compl. at 11-14, 16-17, the allegations are still insufficient. Crucially, most of these allegations also fail to allege an explicit connection to any protected characteristic. *See id.* at 14-16; *see, e.g.*, *Parron v. Herbert*, No. 17-CV-3848 (GBD), 2018 WL 2538221, at *11 (S.D.N.Y. May 18, 2018) ("Conduct that is merely offensive, unprofessional, or childish cannot support a hostile work environment claim." (cleaned up)), *aff'd*, 768 F. App'x 75 (2d Cir. 2019) (summary order).

**E. Retaliation**

For a plaintiff's Title VII retaliation claim to survive a motion to dismiss, a plaintiff must plausibly allege facts showing that "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse [employment] action; and (4) there was a causal connection between the protected activity and that adverse action." *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024) (citation omitted).

The Amended Complaint fails to sufficiently allege that Plaintiff engaged in a

protected activity. "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (citing 42 U.S.C. § 2000e-3), *superseded by statute on other grounds*. Such activity encompasses "informal protests of discriminatory employment practices, including making complaints to management." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). However, "informal complaints must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII." *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012). Consequently, "[c]omplaints centered on general allegations of harassment unrelated to race are not protected activity under Title VII." *Id.* (cleaned up).

The only activities the Amended Complaint identifies that could possibly qualify as protected activity are the complaints French submitted to OCSS management and OCR about the November 14 incident. *See* Am. Compl. at 13-15. Nowhere, however, does the Amended Complaint suggest that those complaints concerned conduct prohibited by Title VII. *See generally id.* Because these "[c]omplaints centered on general allegations of harassment unrelated to race," they "are not protected activity under Title VII." *Risco*, 868 F. Supp. 2d at 110 (citation omitted). Accordingly, they cannot form the basis of a Title VII retaliation claim.

Even if these complaints did qualify as protected activity, however, the Amended Complaint still fails to plausibly allege a causal nexus between the complaints and her suspension. Indeed, the Amended Complaint does not even

allege that French's November 2022 complaints led to her May 2023 suspension. *See generally* Am. Compl.

Nor can temporal proximity provide Plaintiff with a plausible theory of causation as, without more, a lapse in time of "more than a few months is generally too long" to support an inference of causation. *Wilson v. N.Y. & Presbyterian Hosp.*, No. 21-09171-CV, 2022 WL 17587564, at *2 (2d Cir. Dec. 13, 2022) (summary order) (collecting cases); *see also Cunningham v. Consol. Edison Inc.*, No. 03-CV-03522 (CPS), 2006 WL 842914, at *20 (E.D.N.Y. Mar. 28, 2006) ("[A] lag of three, four, and fourteen months is too long for a causal inference to be appropriate."). "Thus, the approximately six[-]month period between [French's] complaint[s] and [her suspension] is too great to establish the causation element of a retaliation claim." *Wiggins v. Jewish Theological Seminary*, No. 10-CV-00431 (JSR) (AJP), 2010 WL 5072096, at *12 (S.D.N.Y. Dec. 14, 2010), *aff'd*, 477 F. App'x 852 (2d Cir. 2012) (summary order). Consequently, French's retaliation claim also fails on causation.

## CONCLUSION

Accordingly, Defendant's motion to dismiss is **GRANTED**. Plaintiff's claims under Section 1981, NYSHRL, and NYCHRL—as well as her hostile-work-environment and retaliation claims under Title VII—are dismissed with prejudice. Plaintiff may, however, file a second amended complaint asserting a Title VII race discrimination claim against the City of New York.

Plaintiff's second amended complaint shall be submitted to the Pro Se Intake Unit no later than **October 2, 2026**. French should caption the document as

"Second Amended Employment Discrimination Complaint" and label the document with the docket number 24-CV-05089.

French is reminded that, because the Second Amended Employment Discrimination Complaint will completely replace, not supplement, the Amended Complaint, any facts or claims that French wants to include from her Amended Complaint must be repeated in the Second Amended Employment Discrimination Complaint. A copy of the Amended Complaint, as well as an Amended Civil Rights Complaint form, are attached to this order.

The Clerk of Court is directed to terminate ECF No. 38.

SO ORDERED.

Dated: August 24, 2026
New York, New York

JEANNETTE A. VARGAS
United States District Judge